# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-01831-SCT

*ROBERT W. KENNEDY*

*v.*

*ILLINOIS CENTRAL RAILROAD COMPANY*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/2008 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN TIMOTHY GIVENS |
| | TIMOTHY W. PORTER |
| | PATRICK C. MALOUF |
| | WILLIAM S. GUY |
| | C. E. SOREY, II |
| | WAYNE DOWDY |
| ATTORNEYS FOR APPELLEE: | LONNIE D. BAILEY |
| | GLENN F. BECKHAM |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 03/11/2010 |
| MOTION FOR REHEARING FILED: | 01/20/2010 |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing filed by Counsel for the Appellee, Illinois Central Railroad Company is granted. The prior opinion is withdrawn, and this opinion is substituted therefor.

¶2.     Robert W. Kennedy filed this action against Illinois Central Railroad Company pursuant to the Federal Employers' Liability Act for damages he incurred as a result of alleged exposure to asbestos. After the defense rested its case-in-chief during the course of

the trial, the Pike County Circuit Court directed a verdict on the issue of damages in favor of Illinois Central Railroad Company, and thereafter entered a final judgment, from which Robert W. Kennedy has appealed to this Court. Finding error, we reverse the trial court's judgment in favor of Illinois Central Railroad Company and remand this case for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3. Robert Kennedy was an employee of Illinois Central Railroad Company (Illinois Central) from 1948 until his retirement in 1992. Kennedy allegedly developed asbestosis, and on August 31, 2006, he filed suit against Illinois Central claiming exposure to asbestos while an employee of Illinois Central in McComb. Kennedy alleged that, pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C.A. § 51 (2009), Illinois Central was negligent, *inter alia*, for failing to provide him with a reasonably safe workplace and failing to warn him of the hazards of exposure to asbestos.

¶4. On August 25, 2008, the jury trial of this matter commenced in the Pike County Circuit Court, Judge Michael M. Taylor presiding. At the conclusion of all the evidence, on August 29, 2008, Judge Taylor directed a verdict in favor of Illinois Central, stating, in part:

> The evidence is simply, in the Court's opinion – even when viewed under the very deferential standard that the Court's called upon to exercise in this case, and accepting as true all the Plaintiff's evidence, there is simply nothing to tie an award – certainly an award of economic damages to, and nor (sic) has the Court heard anything to tie an award of noneconomic damages to. And so for those reasons the Court will grant the Motion for Directed Verdict.
> . . .
> And I probably didn't speak precisely there. And it's not so much a question – obviously pain and suffering are always difficult to quantify, and they're not

2

subject to any sort of absolute calculation. My saying that there was no rational basis for any – to support an award goes more to another issue. And, like I say, I explained it probably poorly, which is to say that I did not hear testimony from the witness stand, even in view – accepting as true everything your witnesses said, with all reasonable inferences flowing from that, that Mr. Kennedy would be better off today without asbestosis. And that's the basis of my ruling is that I understand you're saying he would be, and asbestosis is not a good thing and – but there's no – I did not hear – there is not in the record testimony to support an award that Mr. Kennedy would be better off today without asbestosis, that he would be in any different condition than he is now.

Subsequently, on October 20, 2008, the trial court entered its Judgment on Motion for Directed Verdict and dismissed the case with prejudice. As a result, Kennedy perfected this appeal.

## DISCUSSION

¶5.     Kennedy presents but one issue for this Court to decide.

**WHETHER THE CIRCUIT COURT ERRED IN DIRECTING A VERDICT FOR ILLINOIS CENTRAL RAILROAD COMPANY ON THE ISSUE OF DAMAGES.[1]**

¶6.     In reviewing directed verdicts, this Court's standard of review is *de novo*. *Owens v. Miss. Farm Bureau Cas. Ins. Co.*, 910 So. 2d 1065, 1069 (Miss. 2005) (citing *Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d 1120, 1124 (Miss. 2002); *Morgan v. Greenwaldt*, 786 So. 2d 1037, 1041 (Miss. 2001)). "In reviewing a motion for a directed verdict this Court

---

[1]Robert Kennedy concedes in his brief that he did not present any evidence at trial concerning economic damages. Specifically, Kennedy asserts in his brief that "[w]hile the Appellant may not have introduced any proof of economic damages at trial, the jury was still entitled to consider the issue of noneconomic damages." Thus, we focus today on the sole issue of whether the trial judge should have allowed the jury to consider an award of noneconomic damages.

must decide whether the facts presented, together with any reasonable inferences, considered in the light most favorable to the nonmoving party, point so overwhelmingly in favor of the movant that reasonable jurors could not have returned a verdict for the plaintiff." ***Robley v. Blue Cross/Blue Shield of Miss.***, 935 So. 2d 990, 996 (Miss. 2006) (citation omitted). "If we find that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted." ***Morgan***, 786 So. 2d at 1041-42 (citation omitted).

¶7.     This claim was brought under FELA, which provides in pertinent part that:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C.A. § 51.

¶8.     This Court has stated that "'[t]o prevail under the Act, a plaintiff must prove that (1) the defendant is a common carrier by railroad engaged in interstate commerce; (2) he was employed by the defendant with duties advancing such commerce; (3) his injuries were sustained while he was so employed; and (4) his injuries resulted from the defendant's

4

negligence.'" ***Canadian Nat'l/Ill. Cent. R.R. Co. v. Hall***, 953 So. 2d 1084, 1090-91 (Miss. 2007) (quoting ***Smith v. Med. & Surgical Clinic Ass'n***, 118 F.3d 416, 419 (5th Cir. 1997)). FELA is founded on common-law concepts of negligence and injury. ***Consol. Rail Corp. v. Gottshall***, 512 U.S. 532, 543, 114 S. Ct. 2396, 2404, 129 L. Ed. 2d 427 (1994). However, "FELA supplants an employer's common law duty with a 'far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence.'" ***Canadian Nat'l/Ill. Cent. R.R. Co.***, 953 So. 2d at 1091 (quoting ***Rogers v. Mo. Pac. R.R. Co.***, 352 U.S. 500, 507-08, 77 S. Ct. 443, 449, 1 L. Ed. 2d 493, 500 (1957)).

¶9.    Kennedy argues that a significantly lower burden of proof is imposed upon the plaintiff under FELA; however, Illinois Central asserts that only the causation prong of a common-law negligence analysis is modified by FELA.  "Under the statute, the plaintiff's burden of proving causation is *significantly relaxed* compared to the burden in an ordinary negligence action.  The question is 'whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit.'" ***Id.*** (citing ***Consol. Rail Corp.***, 512 U.S. at 543; quoting ***Rogers***, 352 U.S. at 508).  When there is proof, even though entirely circumstantial, from which a jury may with reason make this inference of employer negligence, the burden of the employee is met, and the obligation of the employer to pay damages arises. ***Rogers***, 352 U.S. at 508.

¶10.    In today's case, the trial court ruled that there were questions for the jury with respect to duty, breach, and causation, or, in other words, that reasonable jurors could have returned a verdict for Kennedy as to these elements of a negligence claim; but, on the other hand, the

trial court determined that on the issue of damages, there was no evidence to support a jury verdict for economic or noneconomic damages, and there was no testimony "to support an award that Mr. Kennedy would be better off today without asbestosis, that he would be in any different condition than he is now."  However, we have stated that "'unless the evidence is so speculative that no reasonable juror could find more than nominal damages,' the trial court may not direct a verdict against the plaintiff."  *Tupelo Redev. v. Gray Corp., Inc.*, 972 So. 2d 495, 516 (Miss. 2007) (quoting *Wall v. Swilley*, 562 So. 2d 1252, 1256 (Miss.1990)). Damages must be shown with reasonable certainty and should not be left to only speculation and conjecture.  *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1164 (Miss. 1992) (citations omitted).  However, a plaintiff should not be deprived of the right to recover simply because of the inability to prove with absolute certainty the extent of the loss.  *Id.* (citations omitted). "'If the damage is certain, the fact that its extent is uncertain does not prevent a recovery.'"  *Id.* (citations omitted).  Further, "[t]he amount of damages to be awarded to an injured litigant is primarily a question of fact for the jury."  *Edwards v. Ellis*, 478 So. 2d 282, 289 (Miss. 1985) (citations omitted).

¶11.    The testimony of Dr. Barry L. Whites, Dr. Arnold Brody, and Kennedy presented issues for jury determination.  Dr. Whites, a pulmonologist, testified to a reasonable degree of medical certainty that he thought Kennedy suffered from asbestosis.[2]  He testified that x-rays of Kennedy's lungs revealed linear markings which mean "fibrosis or scarring . . . . It

---

[2]Dr. Whites testified to a reasonable degree of medical certainty that he thought Kennedy suffered from emphysema as well.

can be from asbestos, it can be from other interstitial[3] lung disease, but it is obviously an abnormality that shouldn't be there." Dr. Whites stated that in patients with scarring in the lung, one hears what are referred to as crackles or Velcro rales, and he further testified to hearing Velcro rales in both of Kennedy's lungs, attributable to asbestosis. Dr. Whites also affirmed that asbestosis is a disease that may progress, and it does not regress. Further, he agreed that asbestos alone is a carcinogen and can cause cancer. Dr. Whites likewise testified that, based on a pulmonary function test done in 2003, Kennedy had "airflow obstruction, chronic airflow obstruction, he has findings here that are also consistent with asbestos-related lung disease."[4] According to Dr. Whites, asbestos, by itself, could cause airflow obstruction, and asbestos had reduced Kennedy's lung reserve. Dr. Whites also testified that Kennedy's two disease processes, emphysema and asbestosis, occurring simultaneously, had further reduced Kennedy's lung reserve.

¶12. Dr. Arnold Brody, a Ph.D. researcher in the area of asbestos-related lung disease, testified by video deposition that if a person had asbestosis, the lung's elastic tissue was replaced by scar tissue, "so a person's lung can become stiff, and that's when, if you measure a restrictive process, that means a person has a stiff lung, that means they are restricted from taking a deep breath." Dr. Brody also testified to ways in which asbestosis causes shortness of breath. Kennedy testified that he was in generally good health and did not have any

---

[3]Interstitial is defined as "situated between the cellular components of an organ or structure." Webster's New World Dictionary 707 (3rd College Ed. 1988).

[4]This also was attributed to Kennedy's severe emphysema.

7

problems breathing when he quit smoking and retired in 1992, but he began experiencing shortness of breath in 1994. He stated that his breathing had gotten worse since he quit smoking, and he needed oxygen when doing any activities. Kennedy further testified that he once was fairly active, but could no longer quail hunt, garden, or fish as he once did because of his breathing problems. He also stated that he could no longer perform his yard work; it took all of his "wind" to crank his chainsaw or weedeater, resulting in insufficient energy to actually use his yard tools. Kennedy further testified that he had to purchase a riding lawn mower and an electric weedeater to accomplish any yard work, but even when operating a riding lawn mower, he was "in trouble" if the mower got stuck.

¶13. The record before this Court provides evidence from which a reasonable juror could find noneconomic damages.

> "'Noneconomic damages' means subjective, nonpecuniary damages arising from death, pain, suffering, inconvenience, mental anguish, worry, emotional distress, loss of society and companionship, loss of consortium, bystander injury, physical impairment, disfigurement, injury to reputation, humiliation, embarrassment, loss of the enjoyment of life, hedonic damages, other nonpecuniary damages, and any other theory of damages such as fear of loss, illness or injury."

Miss. Code Ann. § 11-1-60(1)(a) (Supp. 2009). The testimony discussed *supra* certainly created a question of fact for the jury with respect to pain, suffering, inconvenience, physical impairment, disfigurement, and loss of the enjoyment of life. It was undisputed that Kennedy also suffered from emphysema. However, it is a well-settled principle of tort law that the defendant must take the plaintiff as the defendant finds him. *See **Jordan v. Atchison, Topeka & Santa Fe Ry. Co.***, 934 F.2d 225, 228-29 (9th Cir. 1991) (FELA case). Further,

8

under FELA, an employer is liable for damages for injury or death at work due in whole or in part to the employer's negligence. *Canadian Nat'l/Ill. Cent. R.R. Co.*, 953 So. 2d at 1091 (citation omitted).

¶14.   We are thus constrained to find that the evidence favorable to Kennedy and the reasonable inferences which could be drawn from the evidence presented questions for the jury, not only with respect to duty, breach, and causation, but also as to noneconomic damages. Stated differently, from the evidence found in the record before us, as well as all reasonable inferences which may be drawn from the evidence, viewed in the light most favorable to Kennedy, we cannot safely say that reasonable and fair-minded jurors in the exercise of impartial judgment could have found only for Illinois Central on the issue of noneconomic damages. *Tupelo Redev.*, 972 So. 2d at 513. Therefore, we find that the learned trial judge erred in granting a directed verdict in favor of Illinois Central at the conclusion of the presentation of the evidence in this case.

## CONCLUSION

¶15.   Finding that the trial court erred in granting a directed verdict on the issue of noneconomic damages and entering judgment in favor of Illinois Central Railroad Company on the issue of noneconomic damages, we reverse the judgment of the Circuit Court of Pike County, and remand this case for a new trial on all issues, consistent with this opinion.

¶16.   **REVERSED AND REMANDED.**

**WALLER, C.J., GRAVES, P.J., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. RANDOLPH, J., NOT PARTICIPATING.**

9